## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 21-CR-207 (TNM)** |
|  | : |  |
| **v.** | : | **18 U.S.C. § 231(a)(3)** |
|  | : | **18 U.S.C. § 111(a)(1)** |
| **MATTHEW COUNCIL,** | : | **18 U.S.C. § 1752(a)(1)** |
|  | : | **18 U.S.C. § 1752(a)(2)** |
| **Defendant.** | : | **40 U.S.C. § 5104(e)(2)(D)** |
|  | : | **40 U.S.C. § 5104(e)(2)(G)** |
|  | : |  |

### STATEMENT OF THE OFFENSES

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Matthew Council, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The United States Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police. Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a Joint Session of the United States Congress convened at the Capitol. During the Joint Session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The Joint Session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael J. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. As noted above, temporary barricades and permanent barricades were in place around the exterior of the Capitol, and USCP were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades, and USCP officers and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by USCP officers or any other authorized security official.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. USCP officers attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol using violent methods, including breaking windows and assaulting law enforcement officers. Others in the crowd encouraged and assisted those acts. The riot forced an interruption of the certification of the 2020 Electoral College vote

count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than 2.7 million dollars in losses.[1]

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and Senate—including the President of the Senate, Vice President Pence—were instructed to evacuate the chambers and did so. All proceedings of Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. Considering the dangerous circumstances caused by the unlawful entry to the Capitol, including the danger posed by individuals who had entered the Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 PM, after law enforcement secured the building. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the time the joint session resumed.

### *Matthew Council's Participation in the January 6, 2021, Capitol Riot*

8.      On January 6, 2021, Council participated in the protest on the west side of the Capitol building. A police officer sprayed Council in the face with a chemical irritant, but Council continued up the stairs under the NW scaffolding to the NW Plaza of the Capitol.

9.      At approximately 2:38 PM, USCP CCV shows the defendant outside the Capitol in the NW Plaza. Surveillance shows Council just outside a broken out window that is north of the Senate Wing Door. At that time, the Senate Wing Door—which was first breached at approximately 2:13 PM—had been contained. USCP officers were present and struggling to

---

[1] As of April 5, 2022, the approximate losses suffered because of the siege at the United States Capitol was $2,734,783.15.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

keep unauthorized individuals from entering the Capitol while simultaneously working to clear the Capitol of unauthorized individuals who entered the Capitol during the previous breach. Council agrees that he was present at that location at that time, and that he was yelling at the USCP officers.

10. At approximately 2:40 PM, members of the crowd were trying to breach an emergency door by the Parliamentarian's office on the north side of the NW Plaza. Some of the officers moved to the hallway that led to the Parliamentarian's Door to prevent attempt to prevent rioters from entering at that location if they got inside. At approximately 2:42 PM, an individual broke out the glass to that door and opened it. The rioters overwhelmed law enforcement and surged through the Parliamentarian's Door. The police officers responded by forming a barrier down that hallway to stop additional rioters further infiltrating the Capitol.

11. At approximately 2:44 PM, the defendant entered the Parliamentarian Door. As he approached the line of officers, he began walking at a faster pace. When he reached the line of USCP officers, the defendant barged into them, attempting to push them back and make a hole so that other rioters could go through. Council fell to the ground, and police officers arrested Council on scene. While in custody Mr. Council expressed remorse about pushing the police officer. Council stated that he had not intended to injure the police officer.

12. On December 18, 2021, a podcast called Sovereign Souls published an interview with Matthew Council. In that interview, the defendant stated, "I actually believed that, at the time, that President Trump's speech was gonna include evidence like the flies with the cameras on them and you know, I thought that he was gonna expose everything at that rally."

13. In that same interview, the defendant further stated:

> I went down like this, put my head down, and I pushed four Capitol Police officers back maybe fifty feet, and they slammed me to the ground and at that point started to arrest me. Nobody followed. Nobody followed me. . . . I didn't hurt anybody. . . . [I wanted] to make

way for the Trump supporters to get through to go talk. . . . I mean, like you would do in any other protest that you see. Those people are trying to push, you know, they're trying to get through the line to go talk to whoever it is that they feel is doing the injustice.

And normally when those kinds of things happen, like what happens later on, and I'll explain, the police officer knows who really wants to hurt 'em and who doesn't. And they lower the charges, and you get misdemeanors, and they end up getting dropped, and it's a protest. and you know, you're fighting the good fight. You know what I mean? So that was my intent.

## ELEMENTS OF THE OFFENSES

### *18 U.S.C. § 231(a)(3)*

14.    The defendant admits that he knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers, specifically, putting his hands out, his head down, and pushing against one or more officers. The defendant further admits that at the time of pushing against the officers, the officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

15.    The defendant further admits that the civil disorder obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Specifically, and for the purposes of this plea the defendant admits that on January 6, 2021, at around 3:45 p.m., and in response to Mayor Bowser's order imposing a curfew in the District of Columbia because of the events at the U.S. Capitol, Safeway closed all twelve of its stores in the District of Columbia as of 4:00 p.m. Safeway's stores were supposed to close at 11:00 p.m. Safeway later determined that its District of Columbia stores made between 18% and 47% less in sales to the public on January 6, 2021, than they had been projected to make on that day.

16.    Safeway's District of Columbia stores receive their shipments from a warehouse in Pennsylvania. After 4:00 p.m. on January 6, 2021, the scheduled shipments for the remainder of the day could not be delivered because the stores were closed, and no employees were working.

### *18 U.S.C. § 111(a)*

17.    The defendant admits that he assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the United Stated Capitol Police who was then engaged in the performance of their official duties. The defendant further admits that he did so forcibly, voluntarily, and intentionally. The defendant further admits that he made physical contact with and assaulted a person who was an officer or an employee of the United States who was then engaged in the performance of their official duties and acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charges in Count One of the Indictment.

### *18 U.S.C. § 1752(a)(1)*

18.    The defendant admits that he entered or remained in a restricted building or on restricted grounds without lawful authority to do so and that he did so knowingly.

### *18 U.S.C. § 1752(a)(2)*

19.    The defendant admits that he engaged in disorderly or disruptive conduct in any restricted building or on restricted grounds. The defendant further admits that he did so knowingly and with the intent to impede or disrupt the orderly conduct of Government business or official functions. The defendant further admits that his conduct occurred when or so that his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

### *40 U.S.C. § 5104(e)(2)(D)*

20.    The defendant admits that he knowingly and willfully engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings and that he did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

*40 U.S.C. § 5104(e)(2)(G)*

21.     The defendant admits that he paraded, demonstrated, or picketed in any of the

United States Capitol Buildings and that he did so willfully and knowingly.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____
Sean P. Murphy
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Matthew Council, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/10/22

Matthew Council
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/10/22

Samuel Landes
Attorney for Defendant