**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:21CR40-TNM |
| | ) | |
| DAVID LEE JUDD | ) | |

<u>**Motion to Compel Discovery in Support of Mr. Judd's Claim of Selective Prosecution**</u>

Unfortunately, in recent years, crowds have attempted to breach federal buildings in protests across the country. These incidents have caused significant destruction of property, disruption of federal business, physical injury, and, tragically, loss of life. In prosecuting the suspects in each instance, the federal government has created significant disparities in charges and outcomes.

Mr. Judd does not yet contend the allegations below are sufficient for dismissal of the charges against him. However, they are sufficient for the Court to compel specific discovery regarding disparities in charging decisions.

## I. BACKGROUND

### A. David Lee Judd

The government has charged Mr. Judd in a nine-count indictment based on his alleged conduct outside the United States Capitol on January 6, 2021. ECF no. 37. Of course, on that date, a large group of protestors gathered on the Capitol grounds. Eventually a substantial number – though not Mr. Judd – breached and entered the Capitol building.

The most serious charge against Mr. Judd is 18 U.S.C. § 111(b), assaulting, resisting or impeding certain officers using a dangerous weapon.  ECF no. 37.  The government alleges that Mr. Judd threw a small firecracker in the direction of Capitol police officers.  The government does not allege that Mr. Judd caused injury to any officers or even that the alleged firecracker activated, but nonetheless classified the object as a dangerous weapon for the purposes of the § 111(b) penalty enhancement.

Most of the January 6 defendants were vocal supporters of then-President Donald Trump, a Republican, and were protesting Congress's certification of Democrat Joseph Biden Jr. as the winner of the November presidential election. Many individuals – though not Mr. Judd – then breached the Capitol building with the intent of interrupting Congress's certification of the election results.  Mr. Judd and the rest of the January 6 defendants are being prosecuted by a Democratic administration.

Based on the charging decisions and outcomes sought by the government in Mr. Judd's case, Mr. Judd believes he has a colorable claim of selective prosecution when contrasted with the government's charging and prosecutorial decision-making in violent riots in Portland, Oregon in 2020 as well as at least one D.C. riot case in 2020.

### B. Portland Riots

In the summer of 2020, protestors descended on the Federal Courthouse in downtown Portland, Oregon.  The groups gathered to protest the killing of George Floyd by police officers in Minnesota.  While the protest was less organized around a

candidate than that of January 6, one local newspaper found common threads of advocacy for "racial justice and police accountability."[1]  While neither issue strictly follows party lines, both are currently more closely associated with the Democratic Party.[2]  Then-President Trump voiced his support of such an association through Twitter, "The FBI and Law Enforcement must focus their energy on ANTIFA and the Radical Left, those who have spent the summer trying to burn down poorly run Democrat Cities throughout the USA!"[3]

According to the government, the protests in Portland:

> Were followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault.  One violent event impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov cocktail.  The Mark O Hatfield Courthouse has experienced significant damage to the façade, glass, and building fixtures during the weeks following this incident.  Additionally, mounted building security cameras and access control devices have been vandalized or stolen.  The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000.  Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O.

---

[1] Ding, Jaimie, *Portland Protests: Who turned out night after night?,* The Oregonian (May 30, 2021), available at: https://www.oregonlive.com/news/2021/05/who-protested-night-after-night-in-portland.html.

[2] For example, the "George Floyd Justice in Policing Act of 2021 passed the House of Representative with 219 out of 221 Democrats voting in favor and 210 of 211 Republicans voting against.  *See* Clerk, United States House of Representative, Roll Call 60 – George Floyd Justice in Policing Act of 2021 (March 3, 2021), available at: https://clerk.house.gov/Votes/202160.

[3] *Here are President Trump's 5 Tweets about Portland Today,* The Oregonian (Oct. 12, 2020), available at: https://www.oregonlive.com/politics/2020/10/here-are-president-trumps-5-tweets-about-portland-today.html.

> Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

*United States v. Bouchard,* case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF 1-1 at 4-5.

One example of such damage occurred on July 24, 2020, when "protestors attempted to breach into the Mark O. Hatfield Federal United States Courthouse (USCH) by damaging and removing the protective fencing around the west entrances of the USCH." *Id.* at 5. The marshals and U.S. Customs and Border Protection (CBP) deployed tactical teams to defend the breach. *Id.* After repeatedly defying verbal commands to move back, one defendant "placed his right arm around the neck of CBP officer 1 in headlock maneuver." *Id.* at 6. When another officer came to "remove [defendant's] right arm from around the neck of Officer 1… all three individuals went to the ground." *Id.* At the time, the defendant "was carrying a leaf blower and a shield." *Id.* In contrast to Mr. Judd, the defendant was only charged with a misdemeanor, which the government eventually moved to dismiss without prejudice. 3:20-mj-00165, ECF no. 16.

Another defendant "used a homemade shield to strike the officer in the face." *United States v. Johnson,* case no. 3:20-mj-00170 (D. Ore. July 27, 2020), ECF no. 1 at 5. A search of the suspect revealed an "extendable baton, OC spray, steel plated body armor, helmet, individual first aid kid, shin guards, gas mask, goggles…" *Id.* at 6. This defendant was also only charged with a misdemeanor, which the government subsequently moved to dismiss. 3:20-mj-00170, ECF no. 9.

A third defendant "struck DUSM VICTIM 1 in the face with a shield and then punched DUSM Victim 1 in the face with a closed fist." *United States v. Webb*, case no. 3:20-mj-00169 (D. Ore. July 27, 2021) ECF no. 1 at 5. The defendant "resisted arrest by pulling his arms away from the DUSMs in an attempt to avoid being restrained." *Id.* at 5-6. This defendant was also charged with only a misdemeanor, which the government subsequently moved to dismiss. 3:20-mj-00169, ECF no. 22.

After a review of the evidence, the government charged at least twenty-two individuals in Portland with assaulting an officer, in violation of 18 U.S.C. 111(a). *See* Attachment A, List of Portland Defendants and Outcomes. Of those identified by counsel, at least 25 cases were dismissed, including one in which the defendant carried a knapsack with 14 commercial-grade fireworks. *Id.* Of those cases, at least six cases were dismissed with prejudice through a deferred resolution agreement. *Id.* In other cases involving alleged acts of violence, the government agreed to recommend probation. *Id.*

These dismissals and resolutions have occurred under the same Democratic administration that continues to prosecute Mr. Judd.

### C. Fireworks Cases

Moreover, there have been multiple cases with similar factual circumstances (i.e., fireworks were thrown at or towards police officers) where the government chose to dismiss charges and/or declined to classify fireworks as dangerous weapons.

One such defendant was charged in a one-count indictment with only 18 U.S.C. 231(a)(3) civil disorder despite allegedly igniting and throwing a large, cylindrical

firework at a group of police officers. *United States v. Fox*, case no. 3:20-cr-00501 (D. Ore. filed Oct. 20, 2020).[4]  Notably, the maximum penalty for the civil disorder charge is five years as compared to an enhanced penalty of up to 20 years for the § 111 charge that Mr. Judd is facing based solely on the government's characterization of the firecracker as a dangerous weapon.  18 U.S.C. § 231(a)(3); 18 U.S.C. § 111(a).

In one case in D.C. Superior Court, a defendant (the "D.C. Fireworks Defendant") was charged with felony assault on a police officer while armed and misdemeanor rioting based on throwing a firework at police officers during a riot that took place in D.C. between August 30-31, 2020.[5]  *United States v. Alanna Rogers,* case no. 2020 CF3 006970 (D.C. Super. Ct. dismissed Sept. 30, 2020).  The M-80 style firework thrown by Rogers allegedly burned an assistant chief's pant leg.  *Id.*, Affidavit in Support of an Arrest Warrant.  All charges against the defendant were dismissed without prejudice pursuant to a *nolle prosequi* submitted by the government.  *Id.*, Government's Notice of Nolle Prosequi.

---

[4] ASTORIA MAN ACCUSED OF CIVIL DISORDER FOR THROWING A LARGE CYLINDRICAL FIREWORK AT POLICE, U.S. Attorney's Office District of Oregon (May 30, 2021), https://www.justice.gov/usao-or/pr/astoria-man-accused-civil-disorder-throwing-large-cylindrical-firework-police.

[5] The riot was an anti-police protest that took place in D.C. around the "Black Lives Matter Plaza."  2020 CF3 006970, Affidavit in Support of an Arrest Warrant.

## II. DISCUSSION

While the government has "broad discretion" in "enforc[ing] the Nation's criminal laws," that discretion is, nevertheless, "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations omitted). "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment" is that the government cannot pursue criminal charges against a citizen that amounts to a "'practical denial' of equal protection of law." *Id.* (citations omitted). Such a pursuit would give rise to a claim of "selective prosecution." *Id.*

The primary way in which discriminatory law enforcement can be exhibited is using the prosecutorial prerogative itself to discriminate against those whose constitutionally protected views or activities are not popular with the government (selective prosecution). *United States v. Banks*, 368 F. Supp. 1245, 1251 (D.S.D. 1973). To show selective prosecution, a defendant must show that (1) the prosecution had a discriminatory effect, and (2) that the prosecution was motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 465.

To establish a discriminatory effect, a defendant must show that "similarly situated" individuals were not prosecuted. *Id.* Similarly situated requires "some degree of commonality among the indictable group, such that the defendant challenging his indictment may make a supportable demonstration that those unindicted persons are, in fact, similarly situated, and consequently, there must be

an improper motive behind the selected individual's prosecution." *United States v. Blackley*, 986 F. Supp. 616, 619 (D.D.C. 1997).

The defendant may establish discriminatory purpose either with direct evidence of discriminatory intent or with statistical disparities or other indirect evidence regarding the unequal application of the law. *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

In order to proceed to either an evidentiary hearing or the production of discovery, a defendant must establish "'at least a colorable claim'" as to these two prongs. *Branch Ministries*, 970 F. Supp. at 16.

First, Mr. Judd is similarly situated to the individuals protesting the federal courthouse in Portland and the D.C. Fireworks Defendant.  In another January 6 case, the government has argued that the allegations are not comparable, citing courts' statements of the "*sui generalis* nature of this criminal conduct." *See U.S. v. Miller,* 1:21-cr-00119 (D.D.C. July 22, 2021, ECF no. 39 at 8-9.[6]

Of course, if the standard was whether defendants were "identically situated", Mr. Judd's claim would fall short.  However, the standard requires the individuals simply be "similarly situated." Both Mr. Judd and the above defendants were alleged to have committed violence against federal officers in circumstances where a large crowd was attempting to breach a federal building, and, in at least two instances,

---

[6] Mr. Judd's case resembles the circumstances of the Portland allegations more broadly than that of Mr. Miller.  Mr. Judd never entered the Capitol building, he did not bring any weapons to the Capitol, and never "articulated plans to track and potentially kill a U.S. Capitol police officer" as Mr. Miller is alleged to have done.

fireworks were also involved.  In both cases, the government had substantial – though not identical evidence.  The complaints in the Portland cases identify law enforcement victims and eyewitnesses in each allegation.  Of course, much of the evidence against Mr. Judd will be video evidence.  Finally, the purposes of sentencing in each instance would not be so disparate as to warrant such vastly different outcomes.  18 U.S.C. § 3553(a)(2).  In both cases, the government has an interest in seeking just punishment, promoting deterrence, and protecting the public from the actions of individuals alleged to have attacked officers during attempted breaches of a federal building.

The discriminatory effects in this case are the outcomes: protestors supporting left-leaning causes in Portland assaulted officers in the attempted breach of a federal building and in D.C. assaulted officers directly in an anti-police protest.  Mr. Judd was at a protest associated with right-leaning causes and support of President Trump and is alleged to have assaulted officers in the attempted breach of a federal building. At least 25 similarly situated defendants in Portland and the D.C. Fireworks Defendant had their charges dismissed, whereas Mr. Judd—who caused no injury and who has no history of violence and is in criminal history category I—received a plea offer that would result in estimated sentencing guidelines of ***46 to 57 months***. The disparity in outcomes is sufficient that the government must turn over the targeted discovery specified in Section III. Mr. Judd's request is not a fishing expedition, and he recommends *in camera* review by the Court where work product of open prosecutions is involved.

The discriminatory purpose is that the government has treated violence toward law enforcement differently when it is done by conservative versus liberal protestors.  This purpose is illustrated by the disparate outcomes in large numbers of prosecutions both in Portland in 2020 and in Washington in 2021.

Mr. Judd has made "a colorable claim" that he is the subject of selective prosecution when compared with those arrested for violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111 in relation to the Portland riots.

## III. RELIEF REQUESTED

The above factual basis amounts to a "colorable claim" of selective prosecution, and Mr. Judd requests this Court order discovery regarding the disparities in charges.  Specifically, Mr. Judd seeks:

(1) Communication between the Department of Justice ("Main Justice") and the U.S. Attorney's Office for the District of Oregon regarding prosecution of defendants arrested in connection with protests in 2020.

(2) Communication between management at the U.S. Attorney's Office for the District of Oregon and line Assistant U.S. Attorneys regarding prosecution of defendants arrested in connection with protests in 2020.

(3) Communication between the Department of Justice ("Main Justice") and the U.S. Attorney's Office for the District of Columbia regarding prosecution of defendants arrested in connection with the January 6 demonstrations at the U.S. Capitol.

(4) Communication between management at the U.S. Attorney's Office for the District of Columbia and line Assistant U.S. Attorneys regarding prosecution of defendants arrested in connection with the January 6 demonstrations at the U.S. Capitol.

(5) Communication between the Department of Justice ("Main Justice") and the U.S. Attorney's Office for the District of Columbia regarding prosecution of the D.C. Fireworks Defendant.

    (6) Communication between management at the U.S. Attorney's Office for the District of Columbia and line Assistant U.S. Attorneys regarding prosecution of the D.C. Fireworks Defendant.

*See Armstrong*, 517 U.S. at 468 ("Government must assemble from its own files documents which might corroborate or refute his selective prosecution] claim.")

    To the extent that the materials involved are work product pertaining to open prosecutions, Mr. Judd requests that the government review the communications *in camera* for material relevant to Mr. Judd's selective prosecution claim.


                           Respectfully submitted,

                           David Judd

                           By Counsel

                           ___/s/_____
                           Elizabeth Mullin
                           Virginia Bar Number 86668
                           DC Bar Number 484020
                           Assistant Federal Public Defender

                           Office of the Federal Public Defender
                           1650 King Street, Suite 500
                           Alexandria, Virginia 22314
                           (703) 600-0879 (T)
                           (703) 600-0880 (F)
                           Elizabeth_Mullin@fd.org (email)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2021, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


___/s/_____
Elizabeth Mullin
Virginia Bar Number 86668
DC Bar Number 484020
Assistant Federal Public Defender

### PORTLAND FEDERAL COURTHOUSE PROTEST CASES

*Protestors gathered beginning on May 26, 2020, in various public areas in Portland to protest including the Lownsdale Square, Chapman Square and Terry Schrunk Plaza. The Portland Justice Center, which houses Portland Police Bureau's Central Precinct and the Multnomah County Detention Center borders these parks, as does the Mark O. Hatfield United States Federal Courthouse (hereinafter "Courthouse"). The entire city block occupied by the Courthouse is owned by the USA. The Courthouse was a target of violent protestors and experienced significant damage to the façade, glass and building fixtures in the weeks following the initial protests. Some 74 people were charged by the U.S. Attorney's Office for the District of Oregon.*

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| **Completed Cases** | | | | | |
| Evan Kriechbaum | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00178 | Dismissed without prejudice | Picked up a recently launched tear gas canister. Officers moved to detain him (affidavit says there was no intent to arrest him) for officer safety. No indication that Kriechbaum tried to throw the canister, but he resisted the officers and tried to escape by swinging his arms and wriggling. Swung his elbow back and hit an officer in the face.<br><br>Kriechbaum stated that he didn't realize they were police at the time and that he complied once he realized they were police. The officers were wearing protective gear marked "POLICE", but it was the early morning hours. |
| Gretchen Margaret Blank | 18:111(a)(1)[1] - Assaulting a Federal Officer | Yes | 3:20-cr-00224 | Dismissed with prejudice (DRA[2]) | Blank pushed an officer in the back with a "flimsy" plastic shield when he was attempting to arrest another protestor. The |

---

[1] Felony
[2] Deferred resolution agreement.

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | officer "los[t] his balance." The shield was recovered (pictures in the affidavit). |
| Brodie Storey | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr -00330 | Dismissed with prejudice (DRA) | Officers declared an unlawful assembly and tried to disperse a line of protestors. The affiant alleges that Storey attempted to tackle a deputy U.S. Marshal. The Marshal then tried to arrest Storey, who violently resisted until he was tased. |
| Caleb Wills | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00296 | Dismissed with prejudice (DRA) | The alleged victim, a Deputy United States Marshal was assisting another officer with an arrest when he was allegedly attacked by three individuals, including Wills. The assailants grabbed and punched the victim and attempted to take off his mask. Two of the assailants escaped, but Wills was arrested. Wills has a criminal history (absence without leave from the TN National Guard, probation violation, drug manufacture, delivery and sale, possession of drug paraphernalia and failure to appear) and has active warrants for burglary and felony breaking and entering. |
| Christopher Fellini[3] | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00212 | Dismissed without prejudice | Fellini allegedly shined a green laser at officers. Fellini was tackled and arrested and an officer was hurt in the process (he fell when trying to grab Fellini). Fellini was |

---

[3] https://www.justice.gov/usao-or/pr/seven-arrested-facing-federal-charges-after-weekend-riots-hatfield-federal-courthouse

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | carrying Mace-brand "Pepper Gel" and a small knife. |
| David Michael Bouchard | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00165 | Dismissed without prejudice | Bouchard was told to leave an area. A CBP officer placed a hand on Bouchard's shoulder to move him, when Bouchard put the officer in a headlock. A second officer attempted to remove Bouchard's arm from the first officer and the group ended up in a pile on the ground. Bouchard was arrested. Bouchard admitted that he placed his right arm around the neck and shoulders of the officer, but stated that his intent was not to hurt anyone and was just to "stand his ground." |
| Jeffree Cheyenne Cary | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00329 | Dismissed with prejudice (DRA) | Cary used a shield to knock an officer in the back. Cary was then detained and arrested. |
| Jordan Matthew Johnson | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00179 | Dismissed without prejudice | Johnson allegedly tried to pick up a smoke grenade that had been activated by law enforcement. Officers tried to stop him with rubber bullets, but eventually tackled him to the ground and placed him under arrest for failing to disperse. While he was being arrested, Johnson allegedly struck an officer in the neck, another in the head and resisted arrest. |
| | | | | | Johnson was subsequently interviewed and denied being aware that the people he was tackled by were police officers. He saw |

3

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | camouflage uniforms and denied attacking anyone. Once he was handcuffed, he stopped resisting. Johnson has a criminal history from 2007 to 2013 in Oregon, which includes DUI, failure to appear and probation violations. |
| Joshua Webb | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00169 | Dismissed without prejudice | Webb allegedly struck an officer in the face with a shield and then punched him in the face with a closed fist. Webb was then arrested and pulled his arms away in resistance. Webb stated that he did not hear any warnings given by FPS and PPB to leave the area and that he was tackled and arrested when he was starting to back up. Webb was wearing tactical equipment (tactical vest, shin guards, gloves). |
| Patrick Stafford | 18:111(a)(1)⁴ - Assaulting a Federal Officer | Yes | 3:20-cr-00295 | Dismissed with prejudice (DRA) | Stafford allegedly slammed into an officer with a shield while another protestor (Storey) was being arrested to help him get away. Once on the ground, Stafford was compliant and obeyed all commands. |
| Stephen O'Donnell | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00166 | Dismissed without prejudice | O'Donnell was allegedly shining a flashlight at a CBP agent. The agent identified himself as a "Border Patrol Agent" and told O'Donnell to show him his hands. O'Donnell threw something at the agent's |

---

⁴ Felony

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | face. The agent wasn't sure what the object was, but said it was hard (no injuries). O'Donnell was then arrested. |
| Taylor Charles Lemons | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00374 | Dismissed without prejudice | Lemons allegedly charged at a USMS tactical team carrying a home-made shield. He was repelled with a marshal's arm, which Lemons then struck with the shield. Lemons violently resisted arrest ("twisting, turning, and fighting"). Lemons was arrested while other protestors were throwing objects at law enforcement and while officers were trying to secure the courthouse. <br><br> Lemons was arrested and searched. He was carrying a Luger LCP pistol with 6 rounds loaded. Lemons had a valid CCW permit. |
| Thomas Johnson | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00170 | Dismissed without prejudice | Johnson allegedly struck an officer in the face with a homemade shield. Johnson was carrying an ASP baton, OC spray, steel-plated body armor, a helmet, shin guards, gas mask, goggles. |
| Travis Williams | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00331 | Dismissed with prejudice (DRA) | Williams was allegedly yelling: "Take your mask off! Let's go." Williams lunged towards the neck and face of an officer and another officer attempted to arrest Williams. Williams violently resisted and pulled the officers over a park bench, ripped off "communication sets" from both officers' vests and ripped part of one officer's ballistic |

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | vest partially off his body. Williams was tased to no effect and continued to fight. Williams went limp while the officers were leading him away and screamed that they would need to carry him if he was going to be arrested. Williams continued resisting after being transported to the courthouse. He tried to whip deputies with his hair and tried to break a deputy's arm with his elbow and body weight. Williams said: "I almost ripped your buddy's arm off. I'm a state wrestler." |
| Jennifer Lynn Kristiansen | 18:111(a)(1) - Assaulting a Federal Officer (1)<br><br>40:1315 and 41 C.F.R. 102-74.385 Failing to Obey a Lawful Order (2) | Unknown | 3:20-cr-00245 | Count 1 dismissed with prejudice<br><br>Count 2 dismissed without prejudice | A 37-year-old Portland family law attorney. She claims she was protesting with the "Wall of Moms" when she was separated from the group and groped and assaulted by officers. |
| Giovanni Terrence Bondurant | 18:111(a)(1)[5] - Assaulting a Federal Officer | Yes | 3:2020cr00302 | Dismissed with prejudice (DRA) | A Border Patrol Agent approached Bondurant who was equipped with a shield and had been throwing rocks and bottles with another protestor. The agent told the pair to put down their shields. They refused and tried to leave, when they were grabbed by |

---

[5] Felony

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | | officers. Bondurant struck an officer trying to free the other person, Yarnell.<br><br>Bondurant told officers that he was in the park with his friend when they were approached by officers. He said that they had found the shields on the ground. Bondurant claimed he didn't throw anything and that he had merely tried to help his friend when he was being arrested. Bondurant denied striking the officer and said the officers were dressed in camouflage. |
| Taimane Jame Teo | 18:111(a)(1) - Assaulting a Federal Officer | | 3:2020cr00205 | Dismissed without prejudice | Teo was accused of assaulting officers with a laser.<br><br>Known as "Zouk" in the BLM community. A GoFundMe was created for him and had raised $4,050 as of July 7, 2020. |
| Benjamin Wood-Pavich | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20-cr-00209 | Dismissed without prejudice | No details available. |
| Gabriel Huston | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20-cr-00252 | Dismissed without prejudice | No details available. It looks like he's a philosophy major at Portland State University.[6] |

---

[6] https://www.facebook.com/PDXCLAS/posts/3257374180953442:0

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| Pablo Avvacato | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20-cr-00278 | Dismissed without prejudice | No details available. Avvacato was previously arrested at a reservoir protest.[7] |
| Douglas Dean | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20-cr-00279 | Dismissed without prejudice | No details available. |
| Rebecca Mota Gonzalez | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:2020mj00168 | Dismissed with prejudice | Gonzalez stood in front of officers and refused to comply with orders to disperse. As an officer reached for Gonzalez, she struck him with a closed fist and then was handcuffed and arrested after minor resistance. |
| Joshua Webb | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-mj-00169 | Dismissed with prejudice | Webb was ordered to disperse, but refused and struck an officer in the face with a shield and punched the officer with a closed fist when approached. Webb resisted arrest, but was eventually handcuffed. Webb stated that he did not hear any warnings to leave the area and was backing up to leave when he was tackled and arrested. Webb was wearing a black tactical vest and shin guards. |
| Jerusalem A. Callan | 40:1315 and 41 CFR, Section 102-74.380(b) - Willfully Damaging or | Unknown | 3:2020cr00247 | Dismissed without prejudice | No details available. |

[7] https://www.oregonlive.com/portland/2013/07/four_arrested_in_mount_tabor_r.html

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | Destroying Property | | | | |
| Isaiah Jason Maza, Jr.[8] | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-CR-00343 | Dismissed (Maza is deceased) | Maza and a group of protestors began removing plywood protection on the front of the Courthouse. Once uncovered, Maza tried to kick in the window, struck it with a metal object that appeared to be a hammer. Someone else eventually broke the window ad Maza placed a lit object into the broken window which exploded. A U.S. Marshal suffered injuries to both of his legs as a result of the blast. Maza was chased from the scene and arrested. |
| Dakota Kurtis Means | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:2020cr00392 | Plead guilty  Sentenced to time served (60 days) with 1 year of supervised release | Means threatened a federal contract employee with a paintball gun outside the Courthouse.[9] |
| Josslynn Kreutz | 40:1315 and 41 C.F.R. 102-74.385 Failing to Obey a | Unknown | 3:2020cr00271 | Dismissed with prejudice | No details available. |

[8] https://www.justice.gov/usao-or/pr/portland-man-charged-assaulting-deputy-us-marshal-explosive-device-during-courthouse
[9] https://www.oregonlive.com/crime/2021/01/portland-man-who-threatened-federal-contract-worker-with-paintball-gun-sentenced-to-time-served-year-of-supervision.html?utm_medium=social&utm_campaign=theoregonian_sf&utm_source=facebook&fbclid=IwAR25kRzHLOjWJ8Vj_SZV4ouq5qmUVDTmi1uvy3CXlH6xygyks5Ps_y-TcYU

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
|  | Lawful Order (1)[10] |  |  |  |  |
| Brodie Storey | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20-cr-00330 | Dismissed with prejudice (DRA) | Storey attempted to tackle an officer. Storey was then arrested while he continued to resist and refused to comply with orders. Another protestor assaulted the officer restraining Storey to try and help him. |
| Carly Anne Ballard | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20mj00163 | Pending arraignment | Ballard was spotted near a breach in the fence surrounding the courthouse and was ordered to move away by officers. She refused and began to approach the officers. She was then placed under arrest for not complying and escorted into the courthouse for processing. There, she allegedly yelled profanities and kicked one of the arresting officers in the leg. |
| Andrew Steven Faulkner[11] | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20cr00203 | Plead guilty, sentenced to three years of probation and home confinement. Government agreed to recommend probation. | Assaulted officers by pointing a high-powered laser at police officers. Possessed a sheathed machete. |

---

[10] **Note**: There were other failing to obey a lawful order cases, but they are not reflected here. Refer to this DOJ list of federal defendants.
[11] https://www.justice.gov/usao-or/pr/seven-arrested-facing-federal-charges-after-weekend-riots-hatfield-federal-courthouse

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| Cody Beau Porter | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20cr00211 | Information dismissed | Porter shot a laser at officers. Blank tried to stop officers from arrested Porter. Porter was also carrying a satchel containing 14 "commercial-grade" fireworks (pictures in complaint). |
| Jacob Michael Gaines[12] | 18:111(a)(1) - Assaulting a Federal Officer | Yes | 3:20cr00223 | Guilty to plea to felony, government agreed to recommend low-end of the guidelines | Gaines was observed damaging a barricaded entrance at the Courthouse with a 4 lb DeWalt construction hammer. Officers moved to detain him when Gaines struck one of the deputies with a hammer three times. |
| Lillith Grin | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20cr00290 | Information dismissed | No details available. |
| Benjamin Bolen | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20cr00216 | Guilty plea to misdemeanor assault on a police office, | No details available. |

---

[12] https://www.justice.gov/usao-or/pr/texas-man-charged-assaulting-deputy-us-marshal-hammer-during-weekend-protests-portland

| Defendant | Charges | Arrested on Scene? | Case Number | Disposition | Description |
|---|---|---|---|---|---|
| | | | | parties jointly recommended probation | |
| Tyler John Gabriel | 18:111(a)(1) - Assaulting a Federal Officer (1-5) | Unknown | 3:20cr00280 | Charged with misdemeanor, pending trial | No details available. |
| Noelle Angelina Mandolfo | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20cr00282 | Information dismissed without prejudice | No details available. |
| Sabastian Dubar | 18:111(a)(1) - Assaulting a Federal Officer | Unknown | 3:20cr00289 | Charged with misdemeanor, pending trial | No details available. |
| Dakotah Ray Horton | 18:111(a)(1) and (b) - Assault on a Federal Officer with a Dangerous Weapon, Resulting in Bodily Injury (1) | No | 3:20cr00419 | Plea to felony, per plea agreement government agrees to recommend 24 months | Horton assaulted an officer that was arrested striking him several times from behind. He was identified through photos and videos from the events. At the time of arrest, Horton was carrying a HiPoint 9mm semi-automatic firearm in a holster. |
| Ty John Fox | 18:231(a)(3) - Civil Disorder | Yes | 3:2020cr00501 | Charged with civil disorder, pending trial | Fox used a torch lighter to ignite a large, cylindrical firework, which he threw at officers. An explosion and flash was observed near the officers. |